THE STATE OF KANSAS, *Appellee*, v. GEORGE H. TERRILL, *Appellant*.

No. 18,026.

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Obtaining Money By False Representations.* The fact that some of the false representations made by a defendant, who was convicted for obtaining money by false pretenses, may have been mere opinions and some that did not come within the condemnation of the statute is not fatal to the conviction where false representations were made by him which contributed to some material extent in inducing the owner to part with his money.

2. —— *False Representation Defined.* A false representation made with intent to cheat and defraud another by which money is obtained is a false pretense within the meaning of section 2584 of the General Statutes of 1909 whether it is oral or in writing.

3. PLEADING—*Information—False Representations.* The information examined and held to state an offense under the statute, and it is further held that there is sufficient testimony to sustain the conviction.

Appeal from Pawnee district court. Opinion filed July 6, 1912. Affirmed.

G. Polk Cline, of Larned, and Charles A. Baker, of Kinsley, for the appellant.

John S. Dawson, attorney-general, S. N. Hawkes, assistant attorney-general, and W. H. Vernon, jr., county attorney, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: George H. Terrill, the appellant, was convicted of obtaining $400 from Mrs. M. L. Foss by means of false pretenses. In the information it was alleged that Mrs. Foss was the beneficiary in a policy of insurance issued by the Knights and Ladies of Security and that, with intent to cheat and defraud her, appellant represented to her that the policy had been issued irregularly and that the only way to obtain the money due on the policy was through the assistance of the appellant and one Erdman by paying them $400, and that, believing his representations to be true, she paid him that amount. It is then alleged that the representations were untrue and known by him to be untrue when made. It is contended on this appeal that appellant was, in fact, convicted of an offense other than the one charged against him; that his representations and acts may have made him liable to conviction for defrauding the insurance company, but as the company did not complain of his fraud no one else could, and, at any rate, the testimony did not show that a fraud was committed on Mrs. Foss. His version of the testimony is that M. L. Foss, who was insured, was in bad health and that appellant induced him to take out a policy and accompanied him to the office of Dr. McCurdy, who first examined Foss and refused to pass him. He was at once examined by Dr. Ewing, who reported favorably on the application, and the papers were accordingly made out and forwarded to the home office where the application was approved and a policy of insurance issued. Terrill further claimed that Foss was not initiated in the local lodge

and that the lodge would not receive him as a member; that six months after the policy was issued Foss died from a disease of the heart, a condition which Dr. Mc-Curdy found when he examined him; that Terrill, knowing of the alleged fraud in the issuance of the policy and having participated in it, and knowing also that Foss was not received into the local lodge, represented to Mrs. Foss that she could not obtain the insurance except with the aid of Erdman and himself, who were respectively president and secretary of the local lodge, and that if she would give them $400 they would make out and sign the necessary certificates and papers by which the $1400 mentioned in the policy would be paid; that this was done, and when the insurance money was received he was given $400 and gave one-half of that amount to Erdman.

The testimony in the transcript, which is more complete than in the abstract, does not warrant the inferences drawn by appellant nor his theory of the facts. There was a fair basis for the jury to find that Foss honestly applied for and obtained the policy; that he was in fairly good health; that, while the doctors disagreed as to his condition, the examination of Dr. Ewing, who appears to have been a reputable physician, was not perfunctory, but was honestly made and the risk honestly approved. Appellant in his testimony states that when he advised the taking out of the policy he did not have the death of Foss in view and had no personal knowledge of his bad health. The evidence tends to show that about eight years before the policy was issued Foss had an attack of rheumatism, but that, other than the rheumatic attack, he was in good health when the policy was taken out. There was nothing to show that any facts as to his health or history were concealed from the medical examiner or misrepresented by him, and, while the doctor who passed on him was probably mistaken as to his condition, the testimony warranted the jury in finding that it was

an honest mistake. Again, as to the membership in the lodge, the appellant himself certified in writing that Foss was initiated into the lodge on January 13, 1911, and this certificate was verified by appellant as well as by the president and financier of the lodge. It is true that on the trial appellant testified that Foss was not initiated into the lodge, but he formed that opinion, he said, because he had been so informed and had not seen him there. He was compelled to say, however, that he did not really know whether Foss was a member of the lodge or not. The jury probably concluded that the sworn statement first made, that Foss was a member, supported as it was by the official statement of the officers of the lodge, was more reliable than the testimony given when he was on trial, and that he was admitting the perpetration of one fraud in order to escape punishment for another that was charged against him. It can not be said, therefore, that there was an acknowledged fraud against the society, but, on the other hand, the jury might well have determined that a valid policy was issued, that Foss had paid six assessments on the policy, and that the books showed that he was in good standing in the society when he died.

An offense was alleged in the information. In effect it charged appellant with falsely and fraudulently representing that the policy was irregularly obtained, and that, to overcome this irregularity, the assistance of appellant and Erdman was necessary when, as a matter of fact, the policy was valid and the beneficiary was entitled to the insurance. Under the testimony of the state the policy was valid and Mrs. Foss, who paid $400 in reliance upon the false representations, had a clear right to the insurance. So far as the evidence shows initiation into the local lodge is not a condition precedent to the issuance of the policy. In such societies the policy is frequently issued before initiation, and unless there was an invalidating provision in the

laws of the society or in the contract itself the society could not escape liability on a policy actually issued where assessments had been received and kept, as in this case, on the mere ground that the insured had not gone through the initiatory ceremony in a local lodge.

The fact that some of appellant's misrepresentations may have been mere opinions or that a part of the representations by which Mrs. Foss may have been induced to give up the $400 did not come within the condemnation of the statute, is not fatal to the conviction. It is enough if false representations which are within the statute were made and which contributed to some material extent in inducing Mrs. Foss to part with her money. It has been decided that:

"It is not necessary, to constiute the offense of .obtaining goods by false pretenses, that the owner has been induced to part with his property solely and entirely by pretenses which are false; nor need the pretenses be the paramount cause of delivery to the prisoner. It is sufficient, if they are a part of the moving cause, and, without them, the defrauded party would not have parted with the property." (*In re Snyder, Petitioner, &c.*, 17 Kan. 542, syl. ¶ 3.)

(See, also, *The State v. Cowdin*, 28 Kan. 269; *The State v. Gordon*, 56 Kan. 64, 42 Pac. 346; *The State v. Briggs*, 74 Kan. 377, 86 Pac. 447; *The State v. Hetrick*, 84 Kan. 157, 113 Pac. 383.)

There is nothing substantial in the claim that the false pretenses must be a token or writing or some pretense in that form. The essential feature of the offense is the character and not the form of the false pretense. Within the meaning of the statute (Gen. Stat. 1909, § 2584) any false pretense, whether oral or in writing, by means of which money or personal property is fraudulently obtained is an offense.

There is complaint of statements made by the county attorney in his argument and also that things not in evidence were considered by the jury, but it is hardly

possible that any of these could have affected the verdict or prejudiced the appellant.

There is some criticism of rulings of the court in giving and refusing instructions, but we think the case was fairly submitted to the jury and we find nothing substantial in the objections of appellant.

The judgment is affirmed.